**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**TIFFANY BROWNING,**

    **Plaintiff,**

**v.**                                                    **CASE NO. 3:25-cv-131-MCR-HTC**

**THE DIOCESE OF**
**PENSACOLA-TALLAHASSEE,**
**ST PAUL CATHOLIC SCHOOL, and**
**BLAIR HODGE,**

    **Defendants.**
_____/

**<u>ORDER</u>**

Plaintiff Tiffany Browning filed suit against her former employer, St. Paul

Catholic School, the Diocese of Pensacola-Tallahassee, and Principal Blair Hodge

alleging claims of interference and retaliation under the Family Medical Leave Act

("FMLA"), 29 U.S.C. § 2611, *et seq.* (Counts I, II), and disability discrimination

under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C.

§ 12101, *et seq.* (Count III).[1]  Defendants move to dismiss Browning's Amended

Complaint for failure to state a claim, ECF No. 13, and also seek Rule 11 sanctions,

asserting that Browning's Amended Complaint is frivolous, ECF No. 18.  Browning

---

[1] Browning alleges she exhausted her administrative remedies prior to bringing suit, and
Defendants do not contend otherwise.

opposes both motions, ECF Nos. 14, 19.  On consideration, the Court will grant Defendants' motion to dismiss in part and deny the request for sanctions.

## I.   Background[2]

The Diocese of Pensacola-Tallahassee operates Catholic schools in Escambia County, Florida, including St. Paul Catholic School ("St. Paul").  From 2016 through April 17, 2023, Browning worked at St. Paul as a full-time Front Office Administrative Assistant.  Blair Hodge was the Principal of St. Paul and Browning's direct supervisor at all relevant times.

On January 9, 2023, Browning underwent back surgery through an outpatient procedure, with an expected recovery period of two to three days.  She returned to work on January 12, and although in a great deal of pain, Browning continued working through January 20.  On Monday, January 23, Browning began to run a high fever and her wounds were leaking and appeared infected.  As a result, Browning went to the hospital, where she was diagnosed with a life-threatening septic infection, which then led to several procedures and another surgery before she was discharged on January 27.  Browning also had a wound vacuum device installed

---

[2] The facts are taken from the Amended Complaint and recited in the light most favorable to Browning; however, legal conclusions are not accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

CASE NO. 3:25-cv-131-MCR-HTC

on her back to help speed the healing process. She was told by her doctor that she could not return to work until the device was removed.

During this unexpected medical emergency, Browning kept St. Paul's front office staff and Hodge fully informed. Nonetheless, Defendants did not provide Browning notice of her FMLA rights. On February 9—after Browning requested FMLA paperwork—Defendants provided her a medical form for qualifying FMLA leave, due to be signed by a physician and returned by February 24. Browning timely returned the form to Defendants on February 23, signed by her doctor, who provided a provisional return to work date of April 27 and indicated Browning "would need an accommodation of no sitting for a prolonged period or in one position for a prolonged period upon her return to work."[3] ECF No. 9 at ¶¶ 48–49 (Am. Compl.). Defendants never provided Browning a formal notice designating her absences as FMLA leave, outlining FMLA expectations and obligations, or advising her that they had retroactively deemed her FMLA start date as January 23. Browning thus asserts she was unaware of when her FMLA leave began or when it would end.

On April 1, Browning texted Hodge that subject to her doctor's approval and the removal of the wound vacuum device, which was scheduled for April 12, she would potentially return to work on April 17. Browning alleges that she "further

---

[3] Browning alleges that she continued under the care of her surgeon, a home health care nurse, and a physician specializing in wound care treatment.

informed Defendants that she was and would be recovering for some time after the wound vac was removed and she returned to work." ECF No. 9 at ¶ 61.

On April 5, Defendants informed Browning that she would need to submit a release/fitness for duty certification signed by her surgeon to return to work. On April 12, the wound vacuum was removed, and Browning attended a follow-up visit with her surgeon on April 13 to be cleared to return to work. Browing learned that the wound closure could take one to two months and that full recovery of strength and mobility could take several months.[4] Browning alleges that her daily life was drastically affected, leaving her unable to care for herself or care for her children "during this period" as she was "relegated to complete inactivity with severely constrained mobility." *Id.* at ¶ 89. Browning alleges that her doctor told her to "limit walking or movement of any kind and to stay lying on her stomach (not her back) in order to facilitate healing," which was "communicated to Defendant Hodge." *Id.* at ¶¶ 85, 128. Browning also alleges that she texted Hodge on April 13 (Thursday) to tell her that the device had been removed and she was requesting reinstatement as of April 17 (Monday), but that Hodge did not respond.

---

[4] There is no allegation that this additional one- to two-month recovery period was relayed to Defendants. Also, while it is alleged that Browning's doctor informed her that she would likely have some level of permanent nerve damage in her back, ¶ 91, there is no allegation that this was relayed to Defendants.

CASE NO. 3:25-cv-131-MCR-HTC

On Sunday, April 16, Browning again texted Hodge to say she had not yet received the signed return-to-work form from her surgeon but asking if her reinstatement and return to work on Monday, April 17, was approved.  On April 17, Hodge informed Browning not to come to work because the signed return-to-work form was required.  Browning said the surgeon was busy and might not be able to sign until that evening.  Hodge then texted Browning:

> We have not received the paperwork requested on April 5, 2023 confirming that your doctor has cleared you to return to work. As of April 17, 2023, you have exhausted all of your FMLA leave time. You have also exhausted all of your accrued leave. We are no longer able to keep you active as an employee. Effective today, we are terminating your employment.

ECF No. 9 at ¶ 76.

As noted above, Browning was unaware of the date that her FMLA leave would expire and asserts she was not previously informed that her FMLA start date was January 23 or that she would be terminated if her signed return-to-work form was not submitted on April 17.  Browning alleges that the return-to-work form requirement shows that Defendants considered or perceived her to be disabled and that Defendants were aware she  needed an accommodation but refused to engage in any process with her to determine what type of accommodation would be needed. Despite having been terminated on April 17, Browning submitted her return-to-work

CASE NO. 3:25-cv-131-MCR-HTC

form on April 18, signed by her physician, stating Browning could return to full duty with no restrictions.[5]  ECF No. 13–1.

## II.    Discussion

A complaint must contain sufficient factual matter that, taken as true, states a facially plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility arises "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements," conclusory statements, labels or mere legal conclusions are not entitled to a presumption of truth and are insufficient to state a claim.  *Id.*; *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).  A complaint that fails to state a claim is subject to dismissal.  Fed. R. Civ. P. 12(b)(6).

In Count I, Browning claims that Defendants interfered with her FMLA rights by failing to provide an initial designation notice, a rights and responsibilities notice, and a notice of retroactive designation of leave.  To state a claim for interference with FMLA rights, a plaintiff must allege facts plausibly showing that she was entitled to an FMLA benefit, and her employer interfered with this benefit.  *See*

---

[5] The return-to-work form is attached to the motion to dismiss and is properly considered because Browning does not challenge its authenticity or its centrality to her claims. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (reaffirming that courts may consider documents outside a complaint if the document is "central to the plaintiff's claims" and "undisputed").

*Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015) (internal citations omitted). Regarding FMLA benefits, a covered employee is entitled to up to 12 weeks of annual leave if unable to perform her job functions because of a "serious health condition;" the employee is also entitled to be reinstated after taking leave. 29 U.S.C. §§ 2612(a)(1)(D), 2614(a). A covered employer is required to provide eligible employees with certain FMLA notices, including a designation notice, a rights and responsibilities notice, and a notice retroactively designating leave. 29 C.F.R. §§ 825.300(d)(1) (a designation notice informs "the employee whether the leave will be designated and will be counted as FMLA leave"); 825.300(c)(1) (a rights and responsibilities notice details an employee's FMLA "expectations and obligations" and the "consequences" of not meeting these obligations); 825.301(d) (an employer "may retroactively designate leave . . . with appropriate notice"). "Failure to follow the notice requirements . . . may constitute an interference with . . . an employee's FMLA rights." 29 C.F.R. § 825.300(e). However, a violation of the notice requirements must have also caused harm to the employee in order to state a claim based on lack of notice. *See Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021) (a mere "technical" violation is insufficient). An employee generally does not suffer harm if she still received her full FMLA benefits despite a notice violation. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89–90 (2002); *see also Mitchell v. Pilgrim's*

CASE NO. 3:25-cv-131-MCR-HTC

*Pride Corp.*, 817 F. App'x 701, 712 (11th Cir. 2020) (citing *Ragsdale*, 535 U.S. at 89, noting an interference claim requires a showing of prejudice).

In moving to dismiss Browning's interference claim, Defendants do not dispute that they are a covered employer, that Browning was a covered employee entitled to FMLA benefits, or that they failed to provide her with the required FMLA notices.[6]  Instead, Defendants argue that because Browning received a full 12 weeks of leave (January 23—April 17) and failed to submit a signed return-to-work form when her 12 weeks of leave ended, *see* 29 C.F.R. § 825.312 (an employer may require a certification form from an employee's health care provider verifying that the employee is able to resume work), she has not alleged she suffered harm from the lack of FMLA notices.  The Court disagrees.

Despite receiving a full 12 weeks of leave, Browning has sufficiently alleged that she suffered harm because she was terminated and denied reinstatement due to the notice violation.  Browning's medical form for qualifying FMLA leave, which she returned to Defendants on February 23, included a provisional return-to-work date of April 27.  Defendants' failure to notify Browning that her FMLA leave had been retroactively designated as beginning on January 23 plausibly precluded her

---

[6] Defendants point out that Browning received a medical form for qualifying FMLA leave on February 9.  To the extent Defendants suggest, without explicitly arguing, that an FMLA medical qualifying form satisfied their notice obligations, they are incorrect. *See* 29 C.F.R. §§ 825.300(d)(1), (c)(1) (distinguishing certifications of health conditions from a designation notice and a rights and responsibilities notice).

from knowing that her 12-week FMLA ending date was April 17. Browning alleges that she was prepared to return on that date, and she did not know that the failure to return the doctor's return-to-work form by this date would result in her termination. It is a reasonable inference that she could have obtained the note in time had she known the significance of the date, as Browning alleges it was late due only to the surgeon's busy schedule. Thus, the lack of notice as to when Browning's FMLA leave began and ended, and lack of notice that her failure to submit the signed return-to-work form by April 17 would result in her termination, plausibly caused harm by interfering with Browning's ability to be reinstated.[7] *See Ragsdale*, 535 U.S. at 90 (finding it "reasonable" that an employee receiving 12 weeks of leave can have a viable interference claim if, due to a notice violation, she could not properly structure

---

[7] The Eleventh Circuit cases cited by Defendants are distinguishable either because the employee was physically unable to timely return to work or the termination was unrelated to the leave notice violation. *See, e.g., Wilson v. CSX Transp., Inc.*, 2025 WL 964568, at *4 (11th Cir. Mar. 31, 2025) (summary judgment evidence showed that an employee did not suffer from a notice violation because she had 12 weeks of leave—and even if she received proper FMLA notices—she still could not have timely returned to work given ongoing medical issues); *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121-23 (11th Cir. 2023) (employee did not suffer harm from a notice violation because she received all FMLA leave requested, returned to work, and her subsequent termination was not related to any request for leave or a claimed notice violation); *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1267 (11th Cir. 2017) (employee suffered no harm because after taking FMLA leave, he was physically unable to resume his job duties). Browning's physician stated on the return-to-work form that she could return to work on April 20 with no restrictions. Neither side makes any argument based on this date being three days after Browning's FMLA leave ending date. At the pleading stage, because Browning was attempting to return on April 17 and represents that the document was late due only to the surgeon's busy schedule, it is a plausible inference that the Defendants' failure to give Browning proper notice of her FMLA leave ending date adversely impacted the date stated on this form.

CASE NO. 3:25-cv-131-MCR-HTC

her leave and suffered harm as a result); *see also Ramji*, 992 F.3d at 1243 (citing the regulations indicating that an employer "must also provide notice to the employee of her eligibility for and rights under the FMLA within a certain timeframe" and that "failure to follow the notice requirements may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights") (alterations accepted).

In Count II, Browning claims she was terminated in retaliation for taking FMLA leave and requesting reinstatement. To state a claim for retaliation under the FMLA, "an employee must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004) (internal citations omitted); *see also Surtain*, 789 F.3d at 1247. In moving to dismiss, Defendants argue that Browning has not alleged she engaged in a statutorily protected activity, but Defendants' argument is restricted to activity that "opposes" an unlawful employment practice, as provided in 29 U.S.C. § 2615(a)(2). Defendants are incorrect because opposing an unlawful employment practice is but one category of FMLA-protected activity. Indeed, exercising or attempting to exercise an FMLA right—i.e., taking FMLA leave or requesting reinstatement—is considered protected activity as well. *Surtain*, 789 F.3d at 1247 n.7 ("We note that there are technically three types of employee activity that can give

CASE NO. 3:25-cv-131-MCR-HTC

rise to a retaliation claim under the FMLA. . . . The third [type] is exercising or attempting to exercise FMLA rights").  Because taking FMLA leave and requesting reinstatement are FMLA-protected activities, *see* 29 U.S.C. § 2615(a)(1), Browning has plausibly alleged that she engaged in statutorily protected activity and as a result was terminated, and a causal connection can be inferred at this stage based on the close temporal proximity.  Defendants' request to dismiss Browning's retaliation claim will be denied.

Lastly, in Count III Browning asserts disability discrimination under the ADA. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . discharge . . . and other terms, conditions, and privileges in employment."  42 U.S.C. § 12112(a).  To state a claim under the ADA, a plaintiff must allege facts plausibly showing that: (1) she has a disability, or was regarded as having an impairment within the scope of the ADA,[8] (2) she is a "qualified individual,"[9] and (3) she suffered an adverse action because the employer discriminated on the basis of her disability or perceived impairment.[10]  *See Akridge*

---

[8] The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities," having a record of such an impairment, or being "regarded as having such an impairment."  42 U.S.C. § 12102(1). The statute as amended defines "impairment" for purposes of the regarded as prong as not requiring a substantially limited major life activity but excluding impairments are "transitory and minor."  42 U.S.C. § 12102(3).

[9] The ADA defines "qualified individual" as meaning one who "can perform the essential functions" of the job, "with or without reasonable accommodation."  42 U.S.C. § 12111(8).

[10] The claim must be plausible and does not necessarily need to make out a classic *prima facie* case.  *Surtain*, 789 F.3d at 1246.  Yet, the elements of a *prima facie* case can provide "a useful

*v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024); *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1215 (11th Cir. 2004).   The Eleventh Circuit has stated that "[t]he relevant time period for assessing the existence of a disability, so as to trigger the ADA's protections, is the time of the alleged discriminatory act." *Equal Emp. Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019).

Defendants argue that on the face of the Amended Complaint, Browning fails to plead non-conclusory allegations that she was disabled or regarded as disabled when terminated.   The Court agrees in part.   Browning alleges having an actual physical "disability," which, although not clearly defined in her sprawling Amended Complaint, can be understood as plausibly relating to her back condition that required an outpatient procedure and a severe infection that subsequently required surgery, a wound vacuum, and a lengthy recovery period.   Browning alleges that her "disability" impacted her daily activities of sleeping, self-care, and mobility, *see* 42 U.S.C. § 12102(1)-(2) (defining disability and major life activities), and that she communicated to Hodge that her doctor told her to limit her walking, movement of any kind, and to stay lying flat on her stomach.   ECF No. 9 at ¶ 128.   While a temporary impairment lasting fewer than six months can be substantially limiting

---

guide" in determining whether a claim is stated.  *Mooney v. JMP Pizza Inc.*, No. 1:23-cv-4243-SCJ-CMS, 2024 WL 6083393, at *6 (N.D. Ga. Feb. 29, 2024), *report and recommendation adopted*, No. 1:23-cv-4243-SCJ, 2024 WL 6083388 (N.D. Ga. Mar. 19, 2024).

CASE NO. 3:25-cv-131-MCR-HTC

for purposes of a "disability" under the ADA, *see* 29 C.F.R. § 1630.2(j)(1)(ix), Browning's  allegations about her restrictions as to daily activities are vague as to time (i.e., when she told Hodge or what if anything she told Hodge about how long the restrictions were expected to last).  But even construing these ambiguities in Browning's favor and taking as true that she suffered severe limitations at some point during her recovery and communicated them to Hodge, there still is no plausible allegation that Browning had an actual disability at the time of termination.  Any inference that she did is directly contradicted by Browning's return-to-work form signed by her physician and stating she could return to work with *no* restrictions. *See generally Garcia v. Salvation Army*, 918 F.3d 997, 1010 (9th Cir. 2019) ("A doctor's release to work without restrictions supports a finding that a person no longer suffers from a disability.").  Browning has not contested the authenticity or centrality of that certification or offered any allegations to question certification, and thus this physician's statement controls.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (stating an exhibit controls where it conflicts with the pleading).  As such, Browning cannot plausibly allege that she had an actual disability at the time of termination.  *See STME,* 938 F.3d at 1315 ("It is well settled that 'impairment' in the first 'actual disability' prong, § 12102(1)(A), is limited to impairments that exist *at the time of the adverse employment action . . . .*") (emphasis added).  Browning requests leave to amend, which would be futile.  No proposed

CASE NO. 3:25-cv-131-MCR-HTC

amended pleading was proffered nor any additional facts that could make the claim plausible. Also, while a plaintiff can plead inconsistent legal theories in a complaint, she cannot plead internally inconsistent facts. *See Campos v. INS,* 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998) ("Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party.").

Because Browning cannot plausibly allege an actual disability at the time of her termination, any claim for the failure to accommodate a disability, to the extent Browning has alleged such a claim, also necessarily fails.[11]

---

[11] The Amended Complaint does not include a separate count alleging a failure to accommodate under the ADA, nor are there any allegations that Browning needed a specific accommodation let alone that she requested one when she was ready to return to work. She alleges only that in connection with her original FMLA qualifying medical form — which was filled out by her doctor at the beginning of her impairment/recovery period — her doctor indicated she would need an accommodation of no prolonged sitting and that Defendants refused to *discuss* any potential accommodation. This is insufficient to state a claim because the face of the Amended Complaint does not allege that Browning requested any specific accommodation as necessary for her to return to work *after* her recovery period. *See D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020) (stating "the employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made by an employee") (internal quotations omitted, alteration accepted); *see also Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1336 (11th Cir. 2022) ("[T]to trigger an employer's accommodation duties, a disabled employee need only identify a statutory disability and explain generally how a particular accommodation would assist her."). For the same reasons, and also because Browning did not provide a medical certification showing she needed an accommodation after the Defendants requested it, she cannot plausibly allege that they failed to engage in the interactive process. *See Garcia,* 918 F.3d at 1010 (stating an employer has no duty under the ADA to engage in the interactive process "in the absence of requested medical evidence" (internal quotation omitted)).

However, Browning's "regarded as" disabled claim is plausible. The "regarded as" prong does not require an impairment that limits or is perceived to limit a major life activity, as long as the impairment is not "transitory and minor." 42 U.S.C. § 12102(1)(C) (defining disability as being "regarded as" having an impairment"), § 12102(3)(A) (stating "regarded as" having an impairment means "an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity"); § 12102(3)(B) (excluding "transitory and minor" impairments; defining "transitory" as an impairment with a duration of six months or less but providing no definition of "minor"). Defendants challenge the transitory nature of Browning's alleged impairment as not lasting six months and argue that her taking FMLA leave alone does not establish she was regarded as disabled. Neither argument prevails. Although the alleged impairments lasted less than six months, while Browning recovered, Defendants have not expressly argued that these impairments should be considered "minor" as a matter of law. *See Mayorga v. Alorica, Inc.*, 2012 WL 3043021, at *8-9 (S.D. Fla. July 25, 2012) (finding that the defendants failed to show, based on the face of the plaintiff's complaint, that her impairment was both transitory and minor). Moreover, the allegations, taken as true, show that Browning has plausibly alleged impairments during her recovery that were not minor—a life-threatening infection requiring a wound vacuum and severe mobility restrictions.

Also, contrary to Defendants' argument, the "regarded as" claim does not rest solely on the fact that Browning took FMLA leave but on allegations that Defendants had knowledge of those severe health impacts and restrictions as communicated to Hodge at some point during her recovery period (i.e., that Browning was told by her doctor to limit walking and movement of any kind and to stay on her stomach, ECF No. 9 ¶ 128).[12]  Accepting these allegations as true at this stage, the "regarded as" claim under Count III is plausible.[13]

Because the Court has concluded that all three counts of the Amended Complaint state a plausible claim, Rule 11 sanctions for filing a "frivolous" complaint are not warranted.

Accordingly:

1.    Defendants' Motion to Dismiss, ECF No. 13, is **DENIED** in part as to FMLA interference, FMLA retaliation, and the ADA "regarded as" disabled claim,

---

[12] For purposes of the "regarded as" theory of liability, despite the fact that Browning cannot allege she had an actual disability at the time of her termination, her allegations of Defendants' knowledge of her impairments and their return-to-work certification requirement—that she failed to meet— raise a plausible inference, for purposes of pleading, that they still perceived her as having an impairment at the time of her termination.

[13] While Defendants have not challenged the causal allegation that Browning's termination was *motivated* by her perceived impairments, the Court notes that Browning will have to meet the required but-for standard of causation to prevail on her claim. "On the basis of disability" means that the "adverse employment action would not have occurred but for the plaintiff's disability." *Akridge*, 93 F.4th at 1192.

and **GRANTED** in part as to the ADA claims of disability discrimination and a failure to accommodate.

2.  Defendants' Motion for Rule 11 Sanctions, ECF No. 18, is **DENIED**.

**DONE AND ORDERED** this 18th day of March, 2026.


*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**